UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLEY DONOVAN,

        Plaintiff,                CIVIL ACTION NO. 04-CV-72839-DT

vs.

                                   DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF
SOCIAL SECURITY,              MAGISTRATE JUDGE MONA K. MAJZOUB
        Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion For Summary Judgment be GRANTED, and Plaintiffs Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision of the Commissioner of Social Security that the Plaintiff was not entitled to Supplemental Security Income or Disability Insurance Benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c. The issue for review is whether the Commissioner's decision that the Plaintiff is not disabled was properly supported.

Plaintiff Kimberley Donovan filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 15, 2001. (Tr. 50). She alleged she had been disabled since May 19, 1998. *Id.* Plaintiff's claims were denied on April 15, 2001 (Tr. 35). Plaintiff appealed the denial of her claim and received a hearing before Administrative Law Judge (ALJ) Henry Perez, Jr. on July 11, 2003. (Tr. 457). The ALJ denied Plaintiff's claims in an opinion issued on September 18, 2003. (Tr. 11). Plaintiff appealed the ALJ's decision to this court. Both Parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on August 23, 1963. (Tr. 50). Plaintiff has a history of back pain, carpal tunnel syndrome, and depression. (Tr. 330, 461).

On November 17, 1998, John B. Ditchman, M.D. treated Plaintiff for acute exacerbation of pain in her lower back accompanied by numbness and tingling in her left leg. (Tr. 143). X-rays of Plaintiff's lumbar spine taken revealed mild spondylosis with mild disc space narrowing at the L5-S1 level. (Tr. 146). Plaintiff exhibited a full range of motion and no neurological deficits. *Id.*

On December 4, 1998, Plaintiff entered a drug rehabiliation program at the Sacred Heart Rehabilition center. (Tr. 147). Judith K. Muhammad attempted to perform a psychological evaluation of Plaintiff on December 20, 1998, but was unable to acquire valid results. (Tr. 150).

On September 3, 1999, Plaintiff was admitted to the emergency room after a slip and fall accident. (Tr. 164-68). CT scans of Plaintiff's head, cervical spine, lumbar spine, and x-rays of her pelvis, knees, and ankles revealed no fractures or bleeding. (Tr. 164-8). Plaintiff's spine, however, exhibited marked degenerative changes in the lumbar and thoracic regions. *Id.*

Plaintiff had an ovarian cyst removed on October 25, 1999. (Tr. 183). Plaintiff received an epidural injection to control her back pain on October 31, 2000. She continued to complain of back pain, and on November 18, 1999, Matthew L. McGee, M.D. performed an EMG on Plaintiff's lower extremities and her related paraspinal nerves, which appeared normal. On November 23, 1999 Allen F. May, D.O. performed an electroencephalogram on Plaintiff. (Tr. 167). The EEG did not reveal any neurological abnormalities. *Id.*

Richard A. Scott, D.O. examined Plaintiff's back on May 1, 2000. (Tr. 318-19). Plaintiff had a restricted range of motion when bending, extending, or flexing her back. Dr. Scott opined that

Plaintiff's back problems would improve if she lost weight and improved the strength of her abdominal muscles. (Tr. 319).

On Feberuary 26, 2001, Plaintiff entered the emergency room after another slip and fall, triggered by an acute overdose of Xanax. (Tr. 189). Examinations revealed Plaitntiff was neurologically normal, and did not suffer new long term injuries. (Tr. 189-93). Henry M. Bartkowski, M.D., Ph.D. performed a neurological exam on Plaintiff on April 11, 2001. (Tr. 327). Plaintiff did not exhibit any focal neurological deficits, and her reflexes appeared normal. *Id.*

Following complaints of bilateral wrist pain, Plaintiff underwent an examination by G.R. Weiner, D.O. Dr. Weiner examined Plaintiff's wrists and performed an EMG and nerve conduction studies. On May 9, 2001. (Tr. 301). He opined that Plaintiff's right wrist had a moderately pathologic carpal tunnel and some de Quervain's radial styloid tenosynovitis. (Tr. 302). On July 9, 2001, Plaintiff reported that the pain in her right carpal tunnel had become less severe since she stopped sleeping on her right wrist. (Tr. 311).

On February 6, 2002, Plaintiff underwent a physical residual capacity evaluation by a state agency physician. (Tr. 130). The physician concluded that Plaintiff had the physical capacity for light work subject to limits on climbing, exposure to hazardous environments, and the use of her hands. (Tr. 131-37).

On February 9, 2002 Christian R. Barrett, Ed. D., a psychologist, performed a psychological evaluation on Plaintiff. (Tr. 334). Plaintiff reported a history of alcohol abuse, drug abuse, and depression. (Tr. 333). Dr. Barrett concluded that Plaintiff suffered from dysthymic disorder, social phobia, personality disorder, and a substance abuse problem. *Id.* He gave Plaintiff a Global Assessment of Functioning (GAF) score of 50.

On May 20, 2002, a state agency psychiatrist, Robert L. Newhouse, M.D. performed a psychiatric evaluation of Plaintiff. (Tr. 116). Dr. Newhouse opined that Plaintiff was moderately limited in social functioning and maintaining concentration, and that Plaintiff was mildly restricted in performing the activities of daily living. (Tr. 126).

On June 17, 2003, A. Beouhger, D.O., performed a residual functional capacity evaluation of Plaintiff. (Tr. 346-349). He concluded that Plaintiff's back condition restricted her to sedentary work. *Id.* On July 1, 2003, Stephanie Laughlin, M.S.W., C.S.W., A.C.S.W., performed a functional capacity assessment of Plaintiff. (Tr. 339). Ms. Laughlin concluded that Plaintiff's anxiety disorder was so severe that Plaintiff could not leave her house, even to step onto her front porch. *Id.*

In November, 2003, after the ALJ issued his decision, Plaintiff submitted additional medical evidence to the appeals council. (Tr. 350-456). These materials include a the notes of a psychological evaluation performed four days after the administrative hearing, notes from Plaintiff's therapy from May to September 2003, treatment records from May 2002 to October 2003, and a psychological report from October, 2003.

## HEARING TESTIMONY

Plaintiff testified before ALJ Henry Perez, Jr. on July 11, 2003. (Tr. 460). Plaintiff said that she stopped working because of her carpal tunnel and back problems. (Tr. 462). Plaintiff testified that her social activities were limited by severe panic attacks and migraine headaches. (Tr. 467, 471). Plaintiff denied consuming alcohol since 1998. (Tr 468). Plaintiff claimed to be unable to sit in for more than seven minutes or stand for more than two minutes due to her back pain. (Tr. 471, 474). Plaintiff claimed to be unable to carry any weight over five pounds. (Tr. 474).

Michael Rosko, a vocational expert, also testified at the hearing. (Tr. 457). The vocational expert was asked to testify about the availability of jobs for a hypothetical person of Plaintiff's age,

gender, and educational level who had certain functional limitations. Specifically, he was asked to assume the hypothetical person who was unable to lift no more than ten pounds frequently, and never more than twenty pounds, who could perform in light unskilled jobs that had no more than routine stress, who could not tolerate exposure to workplace hazards, vibrating tools, who could not frequently handle, finger, grip, pinch, squeeze, twist, grasp, or feel with her arms, and who could only occasionally climb ramps or stairs, or be in contact with co-workers. (Tr. 478).

The vocational expert testified that while this hypothetical person would not be able to perform any of Plaintiff's past work, there would be significant numbers of available light and sedentary jobs in the economy. (Tr. 479-480). The vocational expert testified that there would be no work for a hypothetical person who suffered from all of the limitations suggested by Plaintiff's testimony. (Tr. 480). In particular, the vocational expert testified that Plaintiff's alleged inability to hold even a few sheets of paper, and her need to lay down for three quarters of the day would likely preclude all work. (Tr. 481).

## **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If she cannot, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in determining Plaintiff's functional capacity by failing to give proper evidentiary weight to the opinions of a physician and a social worker. Plaintiff argues that the "treating physician rule" required the ALJ to find that Plaintiff was unable to perform any work. In particular, Plaintiff argues that the ALJ was bound to accept the opinion of Dr. Michael Barrett, who concluded that Plaintiff had an overall GAF score of 50. A GAF score of 50 generally indicates that a person's mental impairments are too great for them to be able to work. The ALJ disagreed with Dr. Barrett's GAF assessment, citing Dr. Barrett's narrative commentary and Dr. Newhouse's psychiatric evaluation, both of which concluded that Plaintiff suffered only mild impairments.

The ALJ's decision was supported by substantial evidence on the record. While it is true that the uncontradicted opinions of a treating physician are entitled to great, often controlling weight, Dr. Barrett was not a treating physician. Dr. Barrett merely examined Plaintiff on behalf of a state agency. The opinions of a physician who performs a single evaluation of a patient without any treatment purpose are not entitled to the same level of deference as the opinions of a physician who forms an ongoing treatment relationship with a patient. More importantly, Dr. Barrett's Global Assessment of Functioning score was not consistent with his narrative commentary concerning Plaintiff's condition. The ALJ was entitled to credit either of the two conflicting portions of Dr. Barrett's assessment. Here, the ALJ decided to credit the portion of Dr. Barrett's opinion that was consistent with other medical evidence on the record, the conclusions of Dr. Newhouse.

Plaintiff also argues that the ALJ erred by disagreeing with the report of Stephanie Laughlin, a social worker. Ms. Laughlin's report indicated that Plaintiff's mental impairments were so severe that she could not leave the house to go to her front porch. The ALJ's decision to discount the value of this report was supported by substantial evidence on the record. Objective evidence on the record demonstrates that Plaintiff left her house many times to obtain medical treatment, and to attend the

administrative hearing. Moreover, the social worker's report disagrees substantially with the conclusions of Dr. Barrett and Dr. Newhouse. The ALJ was correct to give greater weight to the medical opinions of two medical doctors than the medical opinions of a single social worker.

Plaintiff argues that the ALJ erred by not finding, at step 3, that Plaintiff did not meet or medically equal a "listed impairment." As discussed above, the ALJ is required to reach a finding of disabled if he concludes that Plaintiff meets or medically equals one of the impairments listed at 20 C.F.R. 404, Appendix 1, Subpart P. To be considered disabled, Plaintiff must meet or be expected to meet the criteria listed in subpart P *continually* for a period of twelve months. 20 C.F.R. § 1525(a). Plaintiff argues that she is disabled because she has the impairments listed in sections 1.04 (disorders of the spine), 12.04, 12.06, and 12.08 of subpart P.

Substantial evidence supports the ALJ's conclusion that Plaintiff does not meet the criteria for spinal disorders listed at Subpart P 1.04. To fit the 1.04 criteria, Plaintiff must demonstrate both nerve compression with accompanying muscle weakness for the required twelve month period. There is substantial evidence on the record that the muscles with nerve roots near Plaintiff's degenerating discs are not weak. (Tr. 198-99, 309, 318, 327). Treatment notes suggest that Plaintiff's back condition would improve substantially if she lost weight and did exercises to improve her abdominal strength. The evidence on the record supports a finding that Plaintiff's condition has not lasted for twelve continuous months, and could be expected to be intermittent in the future.

Substantial evidence supports the ALJ's conclusion that Plaintiff does not meet the criteria for affective disorders listed at Subpart P 12.04, 12.06, and 12.08. To satisfy the criteria of any of these subparts, Plaintiff must demonstrate: (1) marked restriction in the activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration,

persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. 404, Appendix 1, Subpart P 12.04, 12.06, 12.08.

The ALJ's finding that Plaintiff did not have marked restrictions in the activities of daily living, marked difficulty maintaining social functioning, concentration, persistence, or pace, or repeated episodes of extended decompensation was supported by substantial evidence on the record. Dr. Newhouse concluded that Plaintiff did not have marked difficulties in any area, and that Plaintiff had not suffered any extended periods of decompensation. While Ms. Laughlin disagreed with Dr. Newhouse's conclusions, substantial evidence nonetheless supported the ALJ's decision to prefer the medical opinions of a medical doctor over those of a social worker.

Plaintiff argues in the alternative that this case should be remanded for consideration of new evidence under the sixth sentence of 42 U.S.C. 405(g). The Court can remand for further consideration only upon a showing that the new evidence is material, and that there was good cause the new evidence was not presented before the ALJ's decision. *Brainard v. Sec'y of Health and Human Servs.* 889 F.2d 679, 681.

Plaintiff has failed to demonstrate good cause for her failure to submit medical records of treatment occurring before July, 2003. The records Plaintiff seeks to submit her were primarily generated before the administrative hearing. *See* Tr. 361-456. Plaintiff argues that her failure to produce records from Mount Clemens General Hospital should be excused because she did not know that treatment records from the Salvation Army Mobile Treatment Unit were kept there. However, the records themselves disclose that Plaintiff was able to obtain treatment from the unit on July 15, 2003, just days after the administrative hearing. (Tr. 402). Plaintiff has not put forth a good reason why she was able to obtain treatment but not records from the Mount Clemens program in July of 2003.

Plaintiff has not advanced a reason for failing to submit records of other treatment she obtained before July 11, 2003.

The remaining supplemental materials and records created after July 11, 2003, are not sufficiently material to justify a remand. The bulk of these materials are hospital records that do not meaningfully change Plaintiff's medical history. Plaintiff relies heavily on the report of David L. Hayter, Ph.D., a state agency psychologist who performed an additional psychological evaluation of Plaintiff on October 16, 2003. (Tr. 395-99). Dr. Hayter's report, based on a single examination of the Plaintiff, is an insufficient record to justify a remand for redetermination of benefits.

## **RECOMMENDATION**

The Commisioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 3/7/05                                         s/ Mona K. Majzoub
                                                      MONA K. MAJZOUB
                                                      UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon William J. Brady and Geneva S. Halliday on this date March 08, 2005.

Dated: 3/8/05                                         s/ Lisa C. Bartlett
                                                      Courtroom Deputy