UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLEY DONOVAN,

    Plaintiff(s),

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant(s).
_____/

Case No. 04-72839

Honorable Nancy G. Edmunds

**OPINION AND ORDER ACCEPTING AND ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [11] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [6] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [8]**

This is a dispute about whether Plaintiff is entitled to Supplemental Security Income or Disability Insurance Benefits under Titles II and XVI of the Social Security Act. Both parties filed motions seeking summary judgment. Pursuant to 28 U.S.C. § 636(b), the matters were referred to the Magistrate Judge, who issued an opinion recommending that Defendant's motion should be granted. The Court ACCEPTS this recommendation and ADOPTS the court's opinion. Based on the grounds set forth in the Magistrate Judge's Report and Recommendation and for the reasons that follow, the Court therefore GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

**I.   Medical History**

Plaintiff Kimberley Donovan was last employed as a machinist–making and sorting nuts, bolts, and fasteners–until 1998.  (Tr. 461.)  She alleges that this employment ended because of her "Carpal Tunnel [Syndrome]" and "back injuries."  (Id.)

She has been evaluated by numerous medical professionals.  The evidence is categorized into "Exertional Impairments" and "Non-Exertional Impairments."

**A.  Exertional Impairments**

<u>November 17, 1998 Emergency Room Visit</u>: Plaintiff went to the Bi-County Community Hospital ("Bi-County") complaining of lower back pain.  (Tr. 142-46.)  John B. Ditchman, M.D., was the attending physician who treated her.  (Id.)  An x-ray of Plaintiff's lumbar and sacroiliac spine was negative.  (Tr. 144.)  Plaintiff was given prescriptions, discharged, and instructed to follow up with her primary care physician.  (Tr. 145.)

<u>September 30, 1999 Emergency Room Visit</u>: Plaintiff again went to Bi-County after she allegedly slipped, fell, and hit her head.  (Tr. 164-68.)  Anthony Affatato, D.O., ordered a CT scan.  (Tr. 167.)  The scan revealed no signs of intracranial bleeding, but did show "marked degenerative changes in the lower thoractic, and upper lumbar areas [on her spine] without any signs of fracture."  (Tr. 165.)  She was discharged, given a prescription for Vicodin, and told to follow up with her physician in five to seven days.  (Tr. 166.)

<u>November 23, 1999 Electroencephalogram ("EEG")</u>: Matthew L. McGee, M.D.[1] ordered an EEG.  (Tr. 178.)  The results were normal.  (Id.)

---

[1] Dr. McGee is affiliated with S.P.O.R.T. Physicians, P.C.  (Tr. 169-85.)  According to the records from this company, Plaintiff attended numerous appointments in 1999 and 2000. (Id.)  The doctors' notes from these visits are not legible however.  Thus, it is unclear why Plaintiff was examined and what the diagnoses were.

April 26, 2000 Diagnosis of Richard A. Scott, D.O.: Plaintiff went to see Dr. Scott, an orthopedic surgeon, about her back pain.  (Tr. 318-19.)  A physical examination was conducted.  (Id.)  Dr. Scott noted that Plaintiff had "tenderness of the lumbar spine to palpation," "mild myospasm" and that "upper extremity reflexes appear[ed] to be normal."  (Id.)  He recommended weight loss, conditioning abdominal muscles, and physiotherapy.  (Tr. 319.)[2]

2000 and 2001 injections to treat back pain: On several occasions in 2000 and 2001, Plaintiff received epidermal injections to treat the alleged pain in her back.  (Tr. 186-87, 320-22, 329.)

February 26, 2001 Emergency Room Visit: Plaintiff had another slip and fall after she overdosed on Xanax.  (Tr. 189.)  She again went to Bi-County for treatment.  (Tr. 188-188-95.)  John Dichtman, D.O. was the treating physician.  (Tr. 189-91.)  A CT Scan was performed on her head.  (Tr. 192.)  The results were normal.  (Id.)

April 5, 2001 Emergency Room Visit: Plaintiff went to Bi-County complaining of a headache and pain in her arms.  (Tr. 196-99.)  Joseph Dougherty, D.O. diagnosed Plaintiff with a migraine headache and carpal tunnel syndrome.  (Tr. 198.)

April 11, 2001 Diagnosis of Henry M. Bartowski, M.D., Ph.D.: Plaintiff was evaluated by Dr. Bartowski, a neurosurgeon.  (Tr. 327.)   He found "no focal neurological deficits."  (Id.)

---

[2]Plaintiff had numerous visits with Dr. Scott.  The records provided show six follow-up visits.  (Tr. 311-19.)  The first was on May 15, 2000.  (Tr. 313.)  The last was on August 6, 2001.  (Tr. 311.)

<u>May 7, 2001 Diagnosis of Chaker Diab, D.O.</u>: Dr. Diab ordered an MRI to evaluate Plaintiff's back which was conducted by Allen May, D.O., on June 8, 2001. (Tr. 307.) Based on the initial examination, Diab opined that Plaintiff had "[c]hronic back pain . . . with multi-level degenerative joint disease of L3 to S1." (Tr. 309.)[3] Based on the later MRI, Dr. May found "moderate disk narrowing at L4-L5[,] . . . mild-to-moderate circumferential disk bulge at L5-S1 and to somewhat a lesser extent at L1-L2 and L4-L5." (Tr. 307.)

<u>May 9, 2001 Diagnosis of G.R. Weiner, D.O.</u>: At the request of Dr. Scott and because Plaintiff complained about pain in her forearms and hands, Plaintiff went to see Dr. Weiner. (Tr. 301-02.) Weiner performed an Electromyogram examination ("EMG"). (Id.) The EMG was essentially normal "except for some decreased numbers of motor unit potentials to the right opponens pollicis muscle." (Id.) Dr. Weiner concluded that Plaintiff had "[m]oderately pathologic right carpal tunnel and a milder left carpal tunnel delay." (Tr. 302.) In addition, he recommended that Plaintiff stop sleeping on her right arm. (Id.) Plaintiff followed up with Dr. Scott on July 9, 2001 and reported that changing her sleeping habits had decreased the pain. (Tr. 311.)

<u>June 27, 2001 Diagnosis of Mark Watts, M.D.</u>: Plaintiff was evaluated by Dr. Watts, a neurosurgeon. (Tr. 324-26.) He opined that Plaintiff's back and leg pain "is likely secondary to the degenerative diseases and potentially some nerve root irritation." (Tr. 326.) He did not recommend surgical intervention. (Id.)

<u>Dolanski's RFC</u>: Daniel Dolanski, D.O., a state agency medical consultant, performed an RFC, or Residual Functional Capacity Assessment, on Plaintiff on February 6, 2002.

---

[3]Dr. Diab, who is affiliated with Bi-County, noted that Plaintiff had been following up with Bi-County physicians, but had not found a primary care physician. (Tr. 308.)

4

(Tr. 130-37.) Dr. Dolanski made the following conclusions. Plaintiff (1) could, *for six hours per workday*, stand, walk, and/or sit; (2) could *frequently* lift 10 pounds, stoop, kneel, crouch and crawl; (3) could *occasionally* climb ramps, climb stairs, and balance; and (4) could *never* climb ladders/ropes/scaffolds or grip, grasp, pinch, squeeze, twist, push, or use vibrating tools with either hand. (Tr. 131-33.)

Brougher's RFC: Dr. Brougher, a state agency medical consultant, also performed an RFC on Plaintiff on June 17, 2003. (Tr. 342-49.) He made the following conclusions. Plaintiff (1) could sit *for six hours per workday*; (2) could stand and/or walk *for less than two hours per workday*; (3) could *frequently* lift less than 10 pounds; (3) could *occasionally* lift 10 pounds and balance; and (4) could *never* climb, stoop, kneel, crouch, or crawl. (Tr. 343-44.) Brougher further opined that Plaintiff could perform "sit down and low impact jobs that do not require walking or physical activities." (Tr. 347.)

### B. Non-Exertional Impairments

February 9, 2002 Diagnosis of Christian R. Barrett, Ed.D.: At the request of the Michigan Disability Determination Service, Dr. Barrett performed a Psychological Medical Report on Plaintiff. (Tr. 330-34.) Barrett gave Plaintiff a Global Assessment of Functioning ("GAF") score of 50 and a "Guarded" prognosis. (Tr. 333.) He also noted, however, that Plaintiff appeared in contact with reality, her thinking was relevant and easy to follow, she was friendly but reserved, her social and conversational skills were fair, and her rapport with him was satisfactory. (Tr. 331-33.)

March 20, 2002 Diagnosis of Robert L. Newhouse, M.D.: Dr. Newhouse, a state agency psychiatric consultant, reviewed Plaintiff's files and submitted a Psychiatric Review Technique. (Tr. 116-29.) He concluded that an RFC was necessary. (Tr. 116.) He also

5

found that Plaintiff's daily living activities were mildly restricted; and that she had moderate difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. 126.)

Newhouse's RFC: Dr. Newhouse performed an RFC on March 20, 2002 and determined that Plaintiff retained the ability to perform simple tasks on a sustained basis, but would have trouble working in large group due to her depression and social anxiety. (Tr. 138-40.)

Laughlin's RFC: Stephanie Laughlin, M.S.W., C.S.W., A.C.S.W., performed a mental RFC on Plaintiff on July 1, 2003. (Tr. 336-39.)[4] Laughlin found that Plaintiff "could not work at this time without severe disruption by her panic attacks." (Tr. 339.) Laughlin also indicated that Plaintiff was "markedly limited" in all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 336-37.)

---

[4]Laughlin is affiliated with the Macomb County Community Mental Health ("MCCMH") Services. (Tr. 339.) As noted above, her RFC occurred on July 1, 2003. (Id.) On May 22, 2003, a MCCMH Service "Assessment Survey" was completed. (Tr. 340-41.) The contact was an "initial assessment." (Tr. 340.) In the "DSM-IV Diagnosis" section, the author diagnosed Plaintiff with "Major Depression" that is "Recurrent" and "Severe" as well as having "Panic Disorder with Agoraphobia." (Id.) Then, in the "Summary of Clinical Issues to be Addressed by MCCMH Services" section, it noted that Dr. Yuson would meet with Plaintiff on July 15, 2003. (Tr. 341.) There were three signatures on this assessment: a clinician, a supervisor, and a psychiatrist/psychologist. (Id.) There were not printed names underneath the signatures however. Thus, it is not clear who conducted the examination or signed the report.

## II.   Procedural History

In October of 2001, Plaintiff filed an application for disability and insurance benefits under the Social Security Act.  (Tr. 50-52.)  On April 15, 2002, her claim was denied.  (Tr. 35-38.)  Plaintiff then requested a hearing before an Administrative Law Judge.

Administrative Law Judge Henry Perez Jr. ("the ALJ") conducted the hearing on July 11, 2003.  (Tr. 39.)  The ALJ examined the evidence, heard testimony, and issued an unfavorable decision, *i.e.*, denying Plaintiff benefits.  (Tr. 11-23, 457-82.)  Regarding the RFCs, the ALJ adopted Dolanski's physical assessment and Newhouse's mental evaluation, but did not give weight to Brougher's (physical) or Laughlin's (mental) because he found that only Dolanski's and Newhouse's RFCs were supported by the other evidence in the record.  (Tr. 17, 19-20.)  Regarding Barrett's mental evaluation, the ALJ found there were unexplained inconsistencies between the GAF score/prognosis and his narrative comments.  (Tr. 17.)  The ALJ gave more weight to the latter.  (Id.)  The ALJ also found that Plaintiff's "subjective complaints are not fully credible."  (Tr. 18.)  Thus, the ALJ held that, while Plaintiff did have certain impairments, she did not have any that were medically equal to any listed in Appendix 1 of Subpart P from Title20, Part 404 of the Code of Federal Regulations.  (Tr. 22.)  And, while she is unable to perform any of her past work, there are 16,000 jobs in the state that Plaintiff can perform even with her impairments.  (Id.)

Plaintiff filed a request for the Social Security Appeals Council ("Appeals Council") to review the ALJ's decision.  With the request, she submitted evidence that was not previously considered.  (Tr. 350-456.)[5]  Her request for review was denied.

---

[5]She submitted six exhibits:
   (1) a letter from her attorney (Tr. 350-60),

Plaintiff then filed an appeal in this Court. Both parties filed motions for summary judgment which were then referred to the Magistrate Judge. After considering all the arguments, the Magistrate Judge issued an order recommending that Defendant's motion should be granted and Plaintiff's should be denied. In addition, the Magistrate Judge found that Plaintiff failed to establish good cause for her failure to submit the additional evidence.

Plaintiff filed objections to these findings. Specifically, she alleged that

(1) the diagnosis of Dr. Yuzon should have been given deference because he was Plaintiff's "treating physician;"
(2) she presented good cause for her failure to present the evidence not considered by the ALJ;
(3) her testimony was mischaracterized;
(4) her combination of ailments was not considered; and
(5) she does have a spinal disorder as characterized in Subpart P 1.04.

## III. Standard of Review

Matters which have come before the Court on a Magistrate Judge's Report and Recommendation, issued pursuant to 28 U.S.C. §636(b)(1), are reviewed de novo. In conducting federal court review of Social Security administrative decisions, the scope of review is restricted to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

(2) Henry Ford Hospital medical records (Tr. 361-88),
(3) Diab and Kinner Internal Medicine, P.C. medical records (Tr. 389-94),
(4) Health Medical Clinic medical records (Tr. 395-400),
(5) Mount Clemens General Hospital medical records (Tr. 401-30), and
(6) MCCMH Services medical records (Tr. 431-56).

## IV. Analysis

The Court first notes that the Magistrate Judge's reasoning fully explains why the ALJ's decision was supported by substantial evidence. The Court writes separately to address the issues brought out in Plaintiff's objections.

### A. New Evidence

The Court must first consider the evidence submitted by Plaintiff that was not considered by the ALJ. In disability benefits cases

> where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the new evidence if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). When the district court issues such a remand order, under sentence six of 42 U.S.C. § 405(g), it "does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see also Faucher v. Sec'y of Health & Human Services*, 17 F.3d 171, 173-75 (6th Cir. 1994).

*Cline v. Comm'r of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996). In other words, the party appealing the decision must show that (1) the evidence is new, (2) it is material, *i.e.*, might have changed the outcome, and (3) good cause exists for not presenting the evidence in the first proceeding.

Plaintiff's first substantive exhibit submitted to the Appeals Council was medical records from Henry Ford Hospital between January 29, 2001 and August 15, 2001. (Tr. 361-88.) This evidence does not permit a remand because it is cumulative and not new.

9

*See, e.g., Szubak v. Sec'y of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)(holding that "to support a 'new evidence' remand, the evidence must first be 'new' and not merely cumulative of what is already in the record")(citation omitted); *compare* Tr. 327 *with* Tr. 379. Moreover, Plaintiff neither explains how any of this information would possibly have altered the ALJ's decision nor sets forth good cause why these records were not submitted earlier. The second exhibit–medical records from Diab and Kinner Internal Medicine, P.C., between May 7, 2001 and March 14, 2002 (Tr. 389-94)–does not warrant a remand for the same reasons.

Plaintiff also submitted the October 4, 2003 psychological report of David L. Hayter, Ph.D. (Tr. 395-400.) Plaintiff claims that this report is "new" because it was generated after her July 11, 2003 hearing. She also argues that it is material because it is more consistent with Laughlin's RFC than Newhouse's. This is not so. Hayter does give Plaintiff a GAF score of 50 and diagnosed her with depression. (Tr. 399.) In his narrative, however, he noted that she was cooperative, alert, displayed abstract reasoning and adaptive skills, could acquire and use information, interacted appropriately with the examiner, could move and manipulate objects in a coordinated manner, was able to care for herself, could ask questions, and could follow simple directions. (Tr. 395-99.) These comments do no coincide with Laughlin's opinions that Plaintiff cannot work due to "severe disruption by her panic attacks" and that she is "markedly limited" in all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.

Moreover, even if this evidence was material, Plaintiff has not offered a good cause explanation why it could not have been presented earlier. It is not sufficient that the

evaluation took place after the ALJ hearing. Plaintiff has not shown why she could not have been evaluated by Hayter (or another psychologist) before the hearing. Thus, the Court cannot remand based on this evidence.

Plaintiff's fifth exhibit to the Appeals Council–medical records from Mount Clemens General Hospital between May 21, 2002 and October 21, 2003 (Tr. 401-30)–also do not warrant a remand. First, it appears this evidence is cumulative and thus, as explained above, is not "new." Second, no report or opinion contained in these records is likely to change the ALJ's decision. Finally, Plaintiff has not demonstrated good cause why the records were not submitted earlier. She argues that good cause exists because she was not aware of the location where these records were stored. Good cause is not demonstrated, however, by a party's ignorance. Plaintiff does not show, for instance, that she made a reasonable effort to locate these documents.

The final exhibit considered consists of MCCMH Services's medical records from May 20, 2003 to October 9, 2003. (Tr. 431-56.) Like above, Plaintiff has not provided good cause why the records from before her July 11, 2003 hearing were not provided. She does, however, rely on a July 15, 2003 Psychiatric Evaluation by R.A. Yuzon, M.D. (Tr. 431-32.) She claims that this was a follow up to a May 22, 2003 evaluation. *See* note 4 *supra*. Based on this, Yuzon should therefore be considered a treating physician, according to Plaintiff, and his opinion given more weight.

First, Plaintiff has not shown that Yuzon signed the May 22, 2003 report. One of the three signatures on the May 22nd evaluation somewhat resembles Yuzon's signature on the July 15th evaluation. However, other than the slight resemblance, Plaintiff has not offered any additional evidence that Yuzon did sign it and, even if he did, that he was the

evaluator. In fact, the evidence shows the opposite: on the July 15th evaluation, Yuzon checked "Initial," not "Update," for the "Type of Evaluation." (Tr. 431.) Thus, this *initial* evaluation is not entitled to more weight.

Moreover, even if the July 15th evaluation showed that Plaintiff became disabled after the decision, it is not appropriate evidence for the ALJ to consider. *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)(holding that it is not appropriate "to remand the case solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition"). Thus, neither the MCCMH Services records nor any other evidence Plaintiff submitted to the Appeals Council warrants a remand.

### B. Plaintiff's Credibility

Plaintiff argues that the Magistrate Judge mischaracterized her testimony and therefore undermined her credibility. This is not relevant. Moreover, even if the argument is construed to take issue with the ALJ's determination that her "subjective complaints are not fully credible," it is without merit. There is substantial evidence in the record to support the ALJ's conclusion that her complaints were not credible.

### C. Combination of Ailments

Plaintiff next contends that the ALJ did not consider whether the combination of ailments entitled her to benefits. This is incorrect. The ALJ did explicitly consider all of Plaintiff's impairments and then determined that she was not eligible for benefits under the Act. (Tr. 17, 22.)

### D. Spinal Disorder

Plaintiff claims that she had a "Disorder of the Spine" as set out in 20 C.F.R. § 404, Subpt. P, App. 1 § 1.04(A). This requires

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine) . . . .

20 C.F.R. 404, Subpt. P, App. 1 § 1.04(A). The ALJ found that Plaintiff did not meet any of the impairments listed in Appendix 1 of Subpart P. (Tr. 17, 22.) This determination was supported by substantial evidence on the record: even viewed collectively, the diagnoses do not show that Plaintiff met all of these criteria. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)(finding that a lack of evidence indicating the existence of all the requirements of a listed impairment provides substantial evidence to support the finding that the claimant did not have that impairment).

Moreover, for the impairments listed in Appendix 1, "the evidence must show that [it] has lasted or is expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1525(a). Plaintiff did not provide evidence to meet this requirement: there was evidence that her condition would and, in fact, did improve with weight loss and other measures. Thus, the ALJ's decision was based on substantial evidence.

### V. Conclusion

For the reasons set forth above and in the Magistrate Judge's Report and Recommendation, the ALJ's ruling was supported by substantial evidence on the record. Thus, the Court hereby orders as follows:

    (1)    the Magistrate Judge's Report and Recommendation [11] is ACCEPTED AND ADOPTED;

    (2)    Plaintiff's motion for summary judgment [6] is DENIED; and

    (3)    Defendant's motion for summary judgment [8] is GRANTED.

SO ORDERED.


    s/Nancy G. Edmunds  
    Nancy G. Edmunds  
    United States District Judge

Dated:  June 17, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 17, 2005, by electronic and/or ordinary mail.

    s/Carol A. Hemeyer  
    Case Manager